Good morning, Your Honors. My name is David Porter, and I represent the appellant, Vashon Tyrone Jackson. In the words of the magistrate judge in this case, the penal code parole hold that was placed on Mr. Jackson is, quote, a sham. On the bottom of page 4 in our reply brief, we have the full quote. He says, if you have to rely on that, you just have to confess the writ should be granted. The only way the State can save this is to invoke a statute that permits a parole agent, and none was involved in this case, putting a hold on somebody already in lawful custody, usually by another jurisdiction, because he in good faith believes there's been a violation of the terms and conditions of parole. Excuse me. Has Jackson recommitted, voluntarily recommitted himself? Yes, he has, Your Honor. Well, isn't this all moot? Or what's the point of all this? Your Honor, it is not moot. There's been no suggestion of mootness at all in this case from any of the parties or the lower court. I'm asking the question, why isn't it moot? It is not moot, Your Honor, because the expired SVPA term is necessarily predicate to the current SVP confinement that he is serving. And that is from Zitschko v. Idaho. This court's holding that a petitioner can challenge earlier expired rape conviction when he is incarcerated for failing to comply with the State sex offender registration law. And in Brock v. Weston, a petitioner can challenge earlier expired assault conviction while involuntarily committed as an SVP. But he was involuntarily committed. This man voluntarily recommitted himself. He did, Your Honor. So doesn't that make a big difference? No, it does not, because in initial petitions, less than 50 percent of the initial petitions, over 99 percent are found. And so this was the necessary predicate that started the person, Mr. Jackson's confinement. And he specifically preserved the issue in his, in the consent to the succeeding petitions. I'm sorry. I didn't follow at all. In the consent to the extension of commitment that was filed on May 17, 1999, he specifically said, while he consents to the extension and waiver of rights, neither my appellate rights in the pending appeal case nor any habeas corpus rights pertaining to my original 1997 order of commitment to the custody of the CDC Department of Mental Health. Oh, so he's conferring jurisdiction on us by his grace? He can do what Congress can do and that is take a case's otherwise moot and breathe life into it again by saying, I'm preserving my rights? I'm still waiting for an answer to Judge Rhodes' question. If he has recommitted himself, if he's now there voluntarily, why, what's his federal beef for purposes of having a life controversy? Because the subsequent recommitments for the original commitment is a necessary prerequisite to the subsequent. But that's over. But that's over and he's now consented to it. Well, the other ones were over, too, and Zischko and Brock, those were over as well, Your Honor, but the fact of the matter is that you have to complete all five steps of the program at Atascadero before you're even let out, before you're even considered to be let out. And the initial, so the initial I see. So he has, what would have happened if he hadn't agreed to recommit? Then he would have been, he would have gone to Sacramento County Jail, which he did not want to do because of the conditions there. He would have had to stay there until the proceedings were initiated and he would have had a right to the jury finding true or false the petition of recommitment. Okay. So why was he required to do that? I'm still having trouble with the concept that we have a life controversy here. This, I You're saying he was forced to do it. Yes, Your Honor. That's what you're saying. Well, but that's what I understand. In what sense was he forced? He could have insisted on going through the procedures and But those procedures don't remedy the violation. The violation was at the point where this happened, the State court did not have jurisdiction. The State court did not have Without that From the beginning. Exactly. From the beginning. From the very beginning. From the time when that 30564 But you agree that if he had, I mean, let's say when the time came he had not consented and he gets taken to the dirty jail and spent some time there and he goes before a jury and the jury says no, he'd be out. And whatever happened to him with original commitment would be, would be moot. Well, I don't think he can He goes through this procedure and the jury had said no. I mean, and what would have happened then? Well, then he would have been released, Your Honor. Okay. But you can't force the person to The only reason he's in custody is that he did, he's agreed to this, not because of his original procedure, but because this other thing has happened. No. He might have been and he might not have been. I mean, the jury could have gone either way, Your Honor, but you can't force the person to go through the recommitment procedure in order to preserve the constitutional issue. He didn't, from the very get-go the State could not have jurisdiction. I'm not even sure that the, that whichever way he had gone, that the, I mean, that commitment is over. You now have a new term and he either consents to it or he gets preserved by a jury. Your Honor, you're thinking of these commitments as totally independent and separate of each other, not having any effect on one another. And what I'm telling you, and I can present the Court with You want to clean up the first one in his favor so he's not considered a sex offender. That's correct, Your Honor. And I can submit to you You say the State court is without jurisdiction, but that has to be determined by looking at State law, right? Yes, it is, Your Honor. Was there any Federal case that says that we have jurisdiction to determine whether there's jurisdiction under State law? Yes, Your Honor. What case besides the Fifth Circuit? The United States Supreme Court in McCleskey v. Zant, Kiso v. Henry, In re Seabolt, In re Milligan. They've said it, but have they ever actually done it? They've said, well, theoretically there's a jurisdictional provision we could They've done it in numerous cases in military courts, Your Honor. The Fifth Circuit has done it, as Judge Rhodes says, in Butler v. King. Military courts or Federal courts? Yes. They operate by Federal law, not by State law? Yes, Your Honor. In Butler v. King, the Fifth Circuit applied this rule. But under ADPA, you don't have to have a Supreme Court case directly on point that supplied it in this very factual situation. Fortunately, we don't have States going around with extraordinary negligence, which is what the State did in this case, taking people who should have been on the street and subjecting them to SVP proceedings. So the fact that we We have to hold that the, at the very least, even assuming we can look at State law, we have to assume, we have to say that the decision of the State court is manifestly unreasonable, whatever the standards under ADPA. Clearly contrary to Federal laws established by the Supreme Court of the United States. And we, I mean, we've cited book and verse on that, and the Respondent has not said anything about why those cases are inappropriate or not controlling. The only thing the Respondent says is, well, you know, no court has ever done exactly the same thing. Well, no court has been presented with exactly these circumstances, Your Honor. Isn't it correct, all the cases you cite, Siebel, Lange, Caiso, Yarborough, Wilson, Milligan, all those cases, the Petitioner was in Federal custody, not State custody. Is that right? That's correct, Your Honor. So does that make a big difference? No, Your Honor. Was there a habeas corpus petition filed in the State court here? Yes, there was. And what happened? There were two Where's that in the record? Court of, it's in our Well, tell me, is it in the record, and I'll find it if it's there. Yes, it's in the record, page tab 2, tab 1 and tab 2. They were both summary denials, no explanation. Okay. So what we have here is what the court was, this court was faced with in three cases, Himes v. Thomas, Luna v. Cambra, and Wilcox v. McGee. In each one of those cases, there was a silent denial in the habeas matter. In Himes, the Oregon parole stat regulations were examined by this court to determine the ex post facto claim. In Luna, the California evidentiary law was examined in detail by this court to determine the IEC prejudice prong. And in Wilcox, in which Judge Kaczynski sat, Washington law on the sufficiency of indictments was examined before the court addressed the double jeopardy claim. In fact, the court said we must determine whether the first indictment was fatally defective under state law. If there were a state decision by the state court on the state law question here, of course this court would need to defer to that decision unless it was a subterfuge to avoid federal examination. But here there has been no reasoned decision. There has been no California court that has explained why what happened in this case was consistent with California law. Don't we have to look at the action of the state court, imagine what they could have done as a reasonable way that they could have found jurisdiction.  No, Your Honor. Isn't the statute that says custody doesn't mean lawful custody, it just means custody? The answer to your first question is no, because Himes, Luna, and Wilcox say the court does an independent review of the record. There is no default. All that means is because we don't have a, we don't know what the rationale of the state court is, we have to look and sort of imagine what it is. So we independently look at it. But in looking at it, we give deference to what we think the state court could have done and figure out is this thing that the, is the summary affirmance supported by the best reading of state law. And in this case, you've got the statute that says it doesn't have to be lawful custody. Custody is enough. The statute says good faith. After Mr. Jackson was, went through the SVP process, the statute was amended to create a good faith safe harbor. That is completely inapplicable to the situation here where, and the case that the Respondent relies on says custody for purposes of the SVP Act would not exist under California law if the state had acted negligently or intentionally to keep the inmate incarcerated in order to retain jurisdiction in an SVP case. That's Johnson v. Nelson citing Whitley II. There are, the only thing that was extraordinary in this case was the extraordinary negligence of the state officials. There were four things the state officials did here in this case. They identified Mr. Jackson as a potential SVP on December 26th. Nothing was done for a full month. After that month, they imposed this sham parole hold under the penal code section. Two days later, he was first evaluated by a psychiatrist, by the psychologist. They waited another three weeks until he was evaluated by the second psychologist. Now we're at February 21st. We're four days before he was originally scheduled to be released. You'd think they'd get on the phone and call the county and say, hey, we need, because now the evaluation is done, they need to give it to the county to get the petition filed. They don't get on the phone. They wait another two days. They send a form letter to, and they send it to the wrong county. Sorry, we goofed. They sent it to the wrong county by apparently regular mail. They do no follow-up. For 15 days, the county writes them back a letter. The Merced County says, hey, by the way, this is the wrong county. Sorry for any delay we've caused. So what do they do then? They send the same form letter to Sacramento County, again, apparently by regular mail. Nothing changed. Nothing, you know, we've got to get going on this case. We're already past the deadline. Nothing. And finally, so they file it finally in the right county in Sacramento. By this time, it is late March. It is already March 4th. And yet the court of appeal looked at this and said it's okay. The court of appeal never looked at this claim, Your Honor. They never looked at this claim. Was it presented to them? It was presented to them, but they never said in a reasonable way, a reasoned decision. They simply affirmed. Why are you saying they didn't look at it? Well, I'm sorry. It's not that they didn't look at it. The Respondent has been claiming that there has been a reasoned decision in the California Court of Appeal on direct appeal that has said that the, that has addressed the federal claim here. And so we've been very careful to say that that is not the case. The claim that was presented. This claim was presented to the court of appeal. On habeas. And the habeas court did look at it. You're right, Your Honor. I'm sorry. You're right. They did look at it and they denied it without reason. What would there be other than habeas that you could, it would have to be on habeas. Yes, Your Honor. Because the claim didn't exist in direct appeal. So he, they, it was presented to the state court in the only way it could be presented was in a habeas position. And they say no. We must presume that they read the papers. We must presume they understood the arguments. And they conclude that it's okay. It's okay under state law. Yes. I'm having difficulty reconciling, you know, once you sort of have this body of three I just have trouble reconciling that with saying no, they are wrong. We're going to come back and we're going to say all the stuff that happened in the state law is defective. You can't take it seriously. You cannot take it seriously, Your Honor. If you read through the transcript of the, of what the magistrate judge said about this, and you look at the facts as you are obligated to do under Wilcox, under Canberra, and under Himes, as you are obligated to do, you cannot take seriously what happened in this case. What would I say? It was extraordinary negligence. What would I say in an opinion about this, you know, if I were sort of honest in writing an opinion? I'd say, you know, this was presented to state court judges who obviously must not have looked at this, or, you know, they're out to lunch when the decision was made. That's what happens in any habeas case, Your Honor. Habeas, the point of habeas is to review the decisions of state courts. Sometimes they're out to lunch and sometimes they're not. But Federal courts are obligated in this situation when there's been no reasoned opinion to independently review the record. And when you do that independent review of the record, there is extraordinary negligence that takes it out of Whitley II and all of the other cases that they've What was presented to the appellate court, the California appellate court, that there was or wasn't jurisdiction? Is that the question? That's correct, Your Honor. And so by the postcard saying denied, that means that they agreed that there was, under the California law, jurisdiction. Yes. And that's what you want us to say, there wasn't jurisdiction. That's correct. And if you read Whitley II, if you read Wakefield, if you read the California cases that the attorney general is relying upon, they are clearly, clearly distinguishable because they do not involve the use of a 3056 penal code hold. Are you saying there was no jurisdiction for that one minute between 12 o'clock midnight and 1201? Is that the one? That's a subsidiary issue. The three-day hold was not permissible under the penal code 3056. So that's our first position. Because he wasn't in lawful custody. Because the parole officer did not have authority to return him to prison. He was already in prison. And so under 3056, he cannot return him to prison. And that's very clear after In Re Law, a 1973 Supreme Court decision of the California Supreme Court. So that's the difference between the cases that they're relying on and our case. There was very clear authority that a 3056 hold was impermissible in this case. And so they run from the 3056. They say, oh, well, that wasn't the real basis. They were confused about that. It was really a regulatory hold, a 45-day hold. Well, for that, there has to be extraordinary circumstances. And the only thing extraordinary in this case was the negligence of the administration in sending it to the wrong county, in not taking this seriously and having him psyched in – he was psyched in time. He was psyched four days before his term was supposed to run out. But did they take seriously the requirements of their statute? No. Kennedy. It's always about par. In other words, it's sort of the way government works. Good enough for – close enough for government work. Well, it's not close enough to have a person indefinitely confined for the rest of their life at Tascadero State Mental Hospital, Your Honor. All right. We've given you double time. Thank you, Your Honor. Okay. May it please the Court. Craig Myers for Respondent. Before I get to the substance of the appeal, which is whether the issue presented was a federal question, I would like, with the Court's indulgence, to discuss briefly on mootness, which I apologize to the Court and to counsel for not bringing this up sooner. It's actually this morning that the idea came to me. And after talking to the DA in the case of Sacramento DA, Mr. Jackson voluntarily recommitted himself three times in this case, in May 20th of 1999, August 1st of 2001, and May 16th of 2003. That's the current commitment that he is on. Each commitment he's entitled to a jury trial, proof beyond a reasonable doubt that he is a present threat, completely different commitment. This Court can address the issue as it is a threshold question to jurisdiction, and this Court in Canas v. Guerrero, 707 F. 2nd, 443 at page 446, indicated that mootness is an element of justiciability and the Court has a duty to consider it to respond to it. The magistrate judge and the district court judge did not discuss it, and admittedly I didn't bring it below, but it is becoming more apparent that the case ---- It is correct that he would not be up against these choices to either go to a jury or agree to consent to commitment if they hadn't held him to begin with. Possibly true, but he was ---- he would have ---- his essential claim is that the Court lacked jurisdiction, which is not a Federal question and actually has no validity, but he just needs to be in custody, which, as this Court indicated, does not need to be lawful custody. So the time they went to recommit him, he was in custody. And by him stipulating ---- But let's say it turns out you're wrong about that, and we look at it and we think you're wrong and we think the State courts were wrong about that, then he would no longer be in a position to be asked to make the choice between either going to the dirty county jail and facing a jury or agreeing to a commitment. The only reason he's put in that position is because of that decision that was made at the time of the first commitment. Well, it's ---- Just factually, am I right in describing what's going on? Well, if his complaint on the first ---- yes, you are correct. If his complaint on the first ---- if his complaint on the first jurisdiction and the second ---- So the question of whether or not the Court initially had jurisdiction in committing him the first time is ---- has continuing relevance. If it's determined that the Court didn't have jurisdiction, then his current commitment, even though it's by consent, would fall, wouldn't it? No, I would disagree, because the recommitment is its own separate issue. It's a two-year commitment. Certainly he wouldn't be up for recommitment the next time. This is a multistage process. So let's say we now were to agree with Petitioner that the State court had didn't ---- you know, they did it wrong and didn't have jurisdiction. What happens when his current term runs out? The original term? The one he was just recommitted for. The State will file another petition, which is going to be up in January of 2005, and he'll be forwarded to counsel and afforded a right to jury trial and under reasonable doubt. Even if we hold that the original commitment was out of virus? I believe so, because what would be his remedy? The original commitment by a court without jurisdiction? He's still in custody. He's in custody by the California Department of Corrections. He'd be in custody and the State would be able to go on and recommit him. Well, it's not even a recommitment. It's a subsequent commitment that based on the current facts of his current state of mind, whether he's likely to do another sexual offense as of the date when they file. It would have actually no regard to the prior and earlier commitments. The claim that Petitioner presents is a State question. Petitioner is not claiming that his prior rape convictions were invalid or that the SVP statute is invalid, just simply that the State court did not follow or the State did not follow the procedures of State law in ordering to extend by three days and then to extend by 45 days. Now, it's important to note that the SVPA Act went into effect on January 1st of 1996. Petitioner's release date was February 25th, 1996. Brand new law. Took the prison board and the States to sort out some issues with the law. There was extraordinary circumstances in this case. And while Mr. Jackson was identified as being an SVP, potential SVP, there's two psychiatrists that they have to meet with. There's petitions. And then where the Board of Prison Terms sent it to the wrong county, that was Merced County where he had his original, his two rape convictions were out of. It's a reasonable mistake to send it to that county where his current custody was out of Sacramento County, where he didn't have any rape convictions. And that was handled relatively quickly. The three-day hold was put on as an extraordinary measure because it was coming up against his time frame. And then he had a probable cause hearing before that three days extended, which extended it by 45 days. It's actually a probable cause hearing to have him held securely at a facility and to extend. And then within that 45 days, the petition was filed, counsel was appointed. And at that point, Petitioner began to seek continuances and demurred. And as the Court of Appeal correctly noted, he was causing some delay at that point. And then all the other time frames within the statute were followed. And Petitioner's counsel takes issue with the fact that they did the three-day hold pursuant to Penal Code 3056. On the printed form, it's also mentioned that it's under California Code of Regulations, Title 15, 2600.1. And I have made the argument below that they followed that provision. However, in reexamining the issue, 3056 would apply to this case as it's noted that I have it quoted here. Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the enclosure of the prison. That's the statute right there. What does that say again? It says, Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the enclosure of the prison. I can actually make copies if the Court wants a copy of this Penal Code section. Mr. Jackson was in prison because he was on parole. So obviously, he's a prisoner on parole. The Court or the Department of Corrections had custody over him and could take him back. And they did that for three days. And they had a – they placed a hold based on probable cause at that point, determined his release date is coming up. We don't have our paperwork in order to commit this guy who's been screened to be a sexually violent predator. Let's place a three-day hold. That gives us some time to get the paperwork in order and have the probable cause hearing, which they wound up having on February 27, 1996. The Board of Prison Terms held a probable cause hearing. So your position is that they basically violated him on his parole? No. No, originally, he was violated on his parole and he was back in prison. That was his prison term which he was in. But the argument is that once he gets released, he's still on parole? Yes. Actually, when he's on release, he had two years left on his parole. And that's in – But you can't just yank him back without cause. Well, they had cause because he was meeting the criteria of the sexually violent predator law. And they held a three-day hold on him. And then within that time, they had a probable cause hearing that extended it by 45 days. And within that time, the petition was filed. Counsel was appointed. And he was back – he was in Sacramento Superior Court facing the SVP petition at that point. When you say they had cause, was there some term of his parole that he violated? I mean, he hardly had time to do that. When he was – oh, no, no. When he was originally in prison, he was on a parole hold. Yeah, not on a parole hold, but he was a violation of his parole. So according to the statute, prisoners on parole. So he's a prisoner and he still is on parole because he's got two years remaining on his parole. They just have the right to bring him back into the prison enclosure, which they only did for – extended it for three days. But you don't have an unlimited right to do that. It has to be subject to some sort of lawful provision, like if he violated parole. Well, correct. But it's also in that same piece of paper that references the Code of Regulations 2600.1, which indicates that in exceptional circumstances, the – if someone's been identified as meeting the SVP criteria, they could place a three-day hold on them to verify or to get their paperwork in order, and then within that time they need to hold a probable cause hearing, which is exactly what happened in this case. But they have to be in custody first. Correct. But he was in custody. And he was in custody on the prison, on his parole hold, and then they extended his release date by three days. He had a February 25, 1996, original release date. And how did they do that? They did that by holding a – they have a piece of paperwork that they fill out that he's met these criteria, he's likely to be an SVP, and they placed a hold based on the Code of Regulations 2600.1 and Penal Code Section 3056, and they extended it by three days. And what do those things say that allows them to just extend his – Well, under 3056, it's talking about that the prisoners on parole remain under the legal custody of the Department of Corrections and shall be subject to – Well, they may be under legal custody and they may be subject to being brought back, but it has to be – but that's very different from saying they are in prison. Right. Well, they could – What authorizes the prison to say we're just going to hold you in prison for – Because – Let's say they have done it for no reason at all. They just said, you know, we just feel that you ought to serve three more days in prison. So under 2600.1, we're going to just keep you here for three more days and we're going to extend your prison term. They can't. Could they do that? Of course they could not. That would be – that would be horrible for them to do that. Under this case, they determined that he met the criteria, the SVPA. They had the evaluations. That gives them cause under extraordinary circumstances to extend his stay by three days and within those three days to hold a probable cause hearing and then extend it by 45 days. You say that it doesn't, but you haven't yet read me anything that says that that's cause or extraordinary circumstances. Why don't you go back to your definition there and tell me where cause or extraordinary circumstances includes this kind of situation. Well, the California Code of Regulations 2600.1 specifically addresses this issue, and I believe in the – in Petitioner's brief, yes, the regulation quoted in there, and it's specifically designed for the SVPA Act where if he meets his criteria and there's extraordinary circumstances, which would have to be met in this case when the law went into effect about 45 days before his release date, a brand-new law, and they followed – followed their law. I mean, they followed the regulations and their statutes. And even if it doesn't apply, it's a good-faith exception. This isn't where they're just extending it randomly. They're following their procedures and following their laws to extend this guy in prison while they get their paperwork in order, having probable cause hearings, appointing counsel, and then going on from there. I notice that my time is up. If the Court had no further questions, respondent would submit the matter. Thank you very much. All right. What if you file – what? Well, do you – If the Court has any questions of me, I'm sorry. I didn't mean to – No, I don't have any questions. All right. Ten days. File simultaneous briefs. Do it in the form of a letter, say. Okay? Thank you. File it in this building. Thank you. All right? Thank you. Okay. I'm going to take a short break. We're going to take a five-minute break. Okay. All rise. This Court today will recess for five minutes. Thank you.
judges: Pregerson, Kozinski, Rhoades